No. 21,695.

C. A. WEST, *Appellant*, v. WILLIAM BRUGGER and N. W. MOXLEY, *Appellees*.

### SYLLABUS BY THE COURT.

1. MINING LEASE—*Construction—Rights of Forfeiture.* Under a contract by which the owner of a tract of land agreed upon certain conditions to grant a mining lease, it is held that a right to declare a forfeiture, if the work of development was suspended for ten days, was given to him by provisions that the other party was to begin work by a certain date, and not cease for more than ten days at a time, and that if he failed to carry out any of the terms of the contract the owner might effect a forfeiture by giving a written notice thereof.

2. SAME—*Right to Forfeit Not Waived by Extension.* Under such circumstances an extension by the owner of the time of commencing work did not amount to a waiver of the requirement that work should not be suspended for more than ten days.

3. SAME—*Lease Assigned—Notice of Forfeiture Sufficient.* Where the other party to such a contract had assigned a part of his rights thereunder to others, he cannot successfully attack the validity of a forfeiture declared by the owner, on the ground that no notice was served upon any one but himself.

4. SAME—*Operation of Mine after Forfeiture—Right of Forfeiture Not Affected.* The rights of the other party to such a contract are not affected by the fact that after the declaration of forfeiture the pe·-

West v. Brugger.

son who had been conducting mining operations under an arrangement with him continued to operate under a new agreement with the owner.

5. SAME—*Acts Authorizing Forfeiture Not Collusive.* The finding of. the trial court against the contention that proceedings for forfeiting rights under such a contract were collusive, and therefore invalid, held to have been supported by substantial evidence, and consequently to be binding upon this court.

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed October 12, 1918. Affirmed.

*A. C. Towne, J. W. Swarts,* and *D. L. Towne,* all of Miami, Okla., for the appellant; *Charles Stephens,* and *Paul McCaskill,* both of Columbus, of counsel.

*R. E. Rosenstein,* of Baxter Springs, for the appellees.

The opinion of the court was delivered by

MASON, J.: C. A. West brought an action against Wm. Brugger for the specific performance of a contract for a mining lease. Brugger defended on the ground that the plaintiff's privileges under the contract had been forfeited in consequence of a cessation of work thereunder for a period of ten days. A trial resulted in a judgment denying the plaintiff relief, and he appeals. N. W. Moxley was joined as a defendant, but, as the vital controversy was between West and Brugger, the latter will be spoken of as the defendant.

On August 10, 1916, the defendant, being the owner of a quarter section of land, executed to the plaintiff a contract by which the latter was given the right (and on his part agreed) to prospect and mine for ore thereon; all mineral produced during the prospecting period to be marketed, and the defendant to receive a royalty of 7½ percent. Two of the provisions of the contract read:

"Said party of the second part [the plaintiff], heirs or assigns, further agree to begin operations within forty days from the date hereof, and agree to work in good faith, and not cease work for more than ten days at any time without permission of party of the first part, delays caused by unavoidable accident or causes beyond the control of said second party alone excepted. . . . It is further agreed and fully understood that in case the said party of the second part, his heirs or assigns do not prospect, mine or develop said tract or parcel of land, or cause the same to be done as hereinbefore set forth and stated, on or before the

20th day of September, 1916, or shall fail in any particular to carry out any of the provisions of this contract, the same shall thereupon become void and of no effect whatever, and in the event the said party of the first part may declare this contract forfeited by serving written notice upon the party of the second part, either in person or through the mail at the last known address of the party of the second part, stating that said contract has been forfeited, and thereupon said party of the first part may take immediate possession of said tract or parcel of land without giving notice to quit, demand of possession or any legal proceedings whatever, and the party of the second part hereby agrees to leave said premises."

A further agreement was included, to the effect that if on or before September 20 the plaintiff or his assigns should discover and develop ore in paying quantities, and should proceed to carry out the objects of the contract by erecting the appropriate works to put the mineral in marketable condition, the defendant would grant him (or his successors) a ten-year mining lease of an agreed form.

The time within which operations were to be begun was extended by agreement. On October 14, 1916, the plaintiff subleased the south eighty acres to N. W. Moxley, executing to him two contracts quite similar to that already described, one covering the southwest quarter of the 160-acre tract, in which a royalty of 10 percent was reserved, and the other covering the southeast quarter, in which the royalty named was 7½ percent —the same as that of the defendant under the original agreement. Moxley at once began work upon the southwest quarter, the time of such commencement being satisfactory to the defendant. Shortly afterwards Moxley "sublet or subcontracted" the premises to a party of four, which included W. T. Hale and A. Y. Young. This party employed Moxley to continue the work for them, and for a time he did so. On February 17, 1917, the plaintiff assigned his rights under his contract with the defendant to George J. Kusterer and three others, who agreed to pay royalties of 12½ percent on the north half of the tract, 10 percent on the southwest quarter, and 7½ percent on the southeast quarter. A stipulation was inserted in the assignment that any work being done on the quarter section by the persons then holding contracts should be considered a compliance with the original contract with the defendant. On February 26, 1917, this work ceased and was not resumed prior to March 10, 1917, on which date the defendant served upon

West v. Brugger.

the plaintiff in person a written notice declaring the contract at an end and all rights thereunder forfeited by reason of that fact. The controversy turns upon the validity of this attempted forfeiture.

1. The plaintiff contends that the contract does not give the defendant the right of forfeiture for any breach excepting a failure to begin work at the time specified (which was waived), or a default in regard to cleaning and marketing the mineral, or paying the royalty. We do not accept this view. It is true the contract provided in so many words for a forfeiture in case the defendant (or his successors) should not prospect, mine or develop the tract by September 20 (the reference being shown by the context to be to the commencement of operations), and did not specifically authorize a forfeiture on account of a cessation of work for ten days, but we regard the clause relating to the avoidance of the contract for a failure in any particular to carry out any of its provisions, as covering such a suspension of operations. The continuous prosecution of the work was obviously of as much importance as the time of commencement, and without it the requirement in the latter respect would afford little protection.

2. The plaintiff also insists that the waiving of the time of beginning work carried with it a waiver of the ten-day rule. We cannot assent to this. The two requirements were closely related, but in a sense independent of each other. The fact that the defendant was willing to defer the beginning of operations from time to time does not in the least imply that he was willing that they might be suspended for an indefinite period at the convenience or pleasure of the other party.

3. The plaintiff challenges the validity of the forfeiture on the ground that no notice thereof was served on any one but himself. Inasmuch as the contract, while running to the plaintiff, his heirs and assigns, provided for a service of notice of forfeiture only upon him, it may be questioned whether the defendant was required to serve notice on any one else. But at all events, he owed no duty to the plaintiff to serve the plaintiff's assignees or subtenants or subcontractors. Therefore, the plaintiff can found no right in this proceeding upon the omission of the defendant to give notice to any third person, and no one except himself is here complaining. A separate

32—Kan.—3099.

action was brought by Kusterer and his associates against the defendant, involving much the same controversy. By agreement the two cases were heard at the same time upon the same evidence, but they were not consolidated. In each a judgment was rendered in favor of the defendant, but no appeal has been taken excepting in the action brought by West.

4. After the defendant had served the notice of forfeiture he made a new contract with Moxley, under which the latter was to continue operations in his own behalf. The plaintiff suggests that the rules applicable to landlord and tenant apply, and that Moxley, having entered the land under contract with the plaintiff, could not dispute his title, and could not attorn to the defendant, or receive possession from the defendant without having first restored it to the plaintiff. We do not regard the point as well taken. The relation of the parties was not strictly that of landlord and tenant, although the analogy may be close. But in any event, while a tenant may not dispute that his landlord had a good title when he put him in possession, he is not estopped to assert that that title has been lost, and in that event he may recognize the new title. (*Sheaff v. Husted,* 60 Kan. 770, 57 Pac. 976; 16 R. C. L. 665.) Moreover, the real controversy here is between the plaintiff and Brugger, the principal defendant. The relation of Moxley to the matter is quite incidential, and if Brugger's effort to extinguish the plaintiff's right to the land was effectual, there is nothing substantial to be litigated between the plaintiff and Moxley.

5. The vital dispute in the case turns upon a question of fact. The plaintiff asserts that the proceedings for a forfeiture were entirely without legal effect, because they were collusive, and were planned and carried out in bad faith. His version of the affair is, in substance, this:

After Hale and his associates had arranged with Moxley to do the work in their behalf, one of them, White, failed to meet his share of the expenses. Therefore, in order to get rid of White, Hale and his other associates arranged with Moxley, the defendant being a party to the plan and consenting to it, that all work should be stopped for ten days, and that upon that ground a notice of forfeiture should be served with the purpose of cutting off the rights of White, it being understood by all the participants in the scheme that as soon as this had

West v. Brugger.

been accomplished the work was to be resumed upon the same basis as before, no rights to be affected excepting those of White.

The plaintiff's evidence was sufficient to make a *prima facie* case in support of this version of the transaction, and it was doubtless for this reason that the trial court overruled a demurrer thereto. But the defendant introduced evidence of a contrary tendency. He swore that the persons who were conducting the operations told him they were through, giving as a reason that at one time they didn't find anything, and that the plaintiff had made a deal with some one else and didn't have to be drilling, and also saying that Young wouldn't put up his part. He also testified that he didn't know that Moxley was going to quit, and had no agreement with him to give him a contract on any part of the land. It is true, as argued by the plaintiff, that there are features of the record that seem to lend support to his contentions on this phase of the case, but the question was one of fact, upon which the decision of the trial court is conclusive. The plaintiff cites cases holding that in an equitable action a reversal will be ordered on appeal if the judgment is thought by the reviewing court to be against the weight of the evidence, but that is not the practice in this jurisdiction. It may be mentioned as bearing upon the equities of the case that the plaintiff testified that two days before being served with the notice he learned that the defendant was going to declare a forfeiture against all the claimants under the contract.

The judgment is affirmed.